**ROBINS KAPLAN LLP**
Roman M. Silberfeld (SBN 62783)
RSilberfeld@RobinsKaplan.com
Breton A. Bocchieri (SBN 119459)
BBocchieri@RobinsKaplan.com
Michael A. Geibelson (SBN 179970)
MGeibelson@RobinsKaplan.com
Daniel L. Allender (SBN 264651)
DAllender@RobinsKaplan.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552–0130
Facsimile: (310) 229–5800

**AXINN VELTROP & HARKRIDER LLP**
Michael L. Keeley (*pro hac vice*)
mkeeley@axinn.com
Rachel J. Adcox (*pro hac vice*)
radcox@axinn.com
Donald W. Hawthorne (*pro hac vice*)
dhawthorne@axinn.com
Jarod G. Taylor (*pro hac vice*)
jtaylor@axinn.com
950 F Street, NW
Washington, D.C. 20004
Telephone: (202) 912–4700
Facsimile: (202) 912–4701

*Attorneys for Plaintiff*
Redbox Automated Retail, LLC

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| REDBOX AUTOMATED RETAIL, LLC<br><br>Plaintiff,<br><br>v.<br><br>BUENA VISTA HOME ENTERTAINMENT, INC., DISNEY ENTERPRISES, INC., LUCASFILM LTD. LLC, MVL FILM FINANCE LLC, MOVIES ANYWHERE LLC, and ANDERSON MERCHANDISERS, LLC<br><br>Defendants. | Case No. 2:18-cv-00677-DDP (AGRx)<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, COPYRIGHT MISUSE, TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, FALSE ADVERTISING, UNFAIR COMPETITION, AND VIOLATIONS OF SHERMAN ACT § 1 AND CARTWRIGHT ACT**<br><br>**DEMAND FOR JURY TRIAL** |

1  Plaintiff Redbox Automated Retail, LLC ("Redbox") brings this First
2  Amended Complaint, pursuant to the parties' stipulation and this Court's order,
3  against Buena Vista Home Entertainment, Inc. ("BVHE"), Disney Enterprises, Inc.
4  ("Disney Enterprises"), Lucasfilm Ltd. LLC ("Lucasfilm"), MVL Film Finance
5  LLC ("Marvel"), Movies Anywhere LLC ("Movies Anywhere") (collectively,
6  "Disney" or the "Disney Defendants") and Anderson Merchandisers, LLC
7  ("Anderson") (collectively, "Defendants") seeking a declaratory judgment and relief
8  for copyright misuse, tortious interference with prospective economic advantage,
9  false advertising (Cal. Bus. & Prof. Code § 17500 et seq. and 15 U.S.C. § 1125(a)),
10  unfair competition (Cal. Bus. & Prof. Code § 17200 et seq.), violations of Section 1
11  of the Sherman Act (15 U.S.C. § 1), and violations of the Cartwright Act (Cal. Bus.
12  & Prof. Code § 16700, et seq.).  The Court has subject matter jurisdiction under 28
13  U.S.C. §§ 1331 and 1367; Section 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26;
14  and 15 U.S.C. § 1121.

15  **INTRODUCTION**

16  1.  In its original complaint, Redbox enumerated the ways in which Disney
17  has brazenly coerced and pressured distributors and retailers into limiting or
18  altogether ceasing their sales to Redbox in order to maintain high retail prices for
19  Disney movies.  Disney's actions have raised Redbox's acquisition costs and
20  prevented Redbox from procuring enough product to allow it to meet consumer
21  demand.  Since then, Disney has only accelerated its attempts to stop Redbox from
22  obtaining Disney titles.  Representatives of Disney's agent, Anderson
23  Merchandisers, LLC, have even followed Redbox employees around retail stores,
24  photographed them, and threatened them with federal prison time for buying Disney
25  films.

26  2.  In 2002, Redbox revolutionized the movie-rental business.  Redbox
27  brought rentals to the market for $1 a day, with no late fees and no membership fees,
28  at a time when the rest of the industry was renting DVDs for $3 or more and selling

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

them for $16 or more.  Redbox was able to do this by offering rentals from a three-by-two-foot self-service kiosk placed at grocery stores and other retailers throughout the country, rather than in its own brick-and-mortar stores.  This not only provided a lower-price alternative for consumers who were already renting movies, it made rentals possible for a whole new segment of the market—those who could previously afford to rent only rarely, if ever.  Consumer demand for Redbox exploded.  Redbox now rents approximately 1 million discs per day.

3.      Some movie studios immediately embraced Redbox and the new consumers it brought to the entertainment industry.  Others initially labeled Redbox a "Red Menace" and sought to eliminate it.  Arguing that cheaper rentals must mean less money for Hollywood movie studios, and even that cheaper rentals of an otherwise identical movie "devalue the movie experience," they refused to offer Redbox new releases until demand for those releases had largely dried up.  Since then, Redbox and those studios have entered into partnerships that benefit not only Redbox and its consumers, but also provide the studios with increased sales demand and promotion of their content.  Disney is the exception to that rule.

4.      In fact, Disney has done everything it can to reduce the supply of low-cost videos offered by Redbox and others.  For example, in October 2017, a major retailer told Redbox that Disney no longer permitted it to sell to Redbox:

> Rebecca,
> Unfortunately, I cannot honor your request.  It is actually in our contract agreement with Disney that we do NOT sell to Redbox vendors as they are technically not supposed to offer the movie at their kiosks the same day we release the movie in the stores...especially for Disney titles.

> Thank you,
>
> Buyer – Entertainment

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

5.     Most recently, Disney enlisted Anderson to assist in its campaign against Redbox.  Anderson performs in-store merchandising services on behalf of product suppliers.  Acting in concert with Disney, Anderson set out to limit and even stop Redbox's purchases from a national big box retailer.  Anderson representatives informed the retailer's employees that Redbox is no longer permitted to purchase in bulk from that retailer and actively interfered with Redbox's attempts to purchase Disney movies.  As explained further below, that retailer agreed to the limitations because of pressure from Disney.

6.     Disney's unlawful conduct affects not only Redbox's ability to compete by offering a lower-priced product to consumers, but also harms other rental outlets that provide a less expensive alternative for viewing Disney content.  This is explicitly acknowledged in the following internal email that an employee of the national big box retailer (name redacted) sent to Redbox, which discusses the effect of the Disney directive on "Mom and Pop rental companies":

From: [Sales Ops]

To:   [Division-1]: All Employees in Division 1

[Division-2]: All Employees in Division 2

Friday 2.23.2018

1. ███    Disney
███████/Disney have a new direction starting with Coco on 2/27 that will cap the number of each sku a customer can ring at the register. That cap will be 5 units per sku.

This will discourage sales to Redbox who are selling off the digital codes on their web site, but will also affect Mom and Pop rental companies.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

7.     Disney wants to eliminate low-cost options like Redbox in order to force consumers to pay as much as possible for Disney's content, even after Disney has already been fully compensated when it first sells that content to a distributor or retailer.  Disney's motive is simple: Disney believes it can command a higher premium in the short term from its distributors and retailers when they sell at higher prices.  But Disney is also deliberately engaging in anticompetitive and otherwise unfair conduct to lessen the field of competitors for its own "direct to consumer" model.  Specifically, Disney is about to acquire a majority interest in digital distributor Hulu as part of its $52 billion acquisition of 21st Century Fox, and it also plans to launch an additional streaming service in 2019.  Defendant Movies Anywhere, as the successor to Disney Movies Anywhere, also recently launched a digital content service.  Disney's plan is to sell its content at the higher prices it is trying to condition consumers to expect, rather than the lower prices consumers can get from Redbox.

8.     In addition to disrupting Redbox's relationships with its suppliers, BVHE and Movies Anywhere have falsely stated or implied on their products, packaging, and websites, and have otherwise stated to consumers through press releases and other statements, that Redbox's rental and sale of Disney titles is unlawful.  Specifically, BVHE and Movies Anywhere falsely state that a purchaser may not rent or resell the individual components of Disney "Combo Packs" and that Redbox's sales of the digital movies included in the Combo Packs are unauthorized and violate Disney's contracts and copyrights.  On information and belief, and for at least the past five years, every Combo Pack distributed by BVHE, including for *Beauty and The Beast*, *Cars 3*, and *Frozen*, contains the following or similar language on the back of the jewel case:  "This product is authorized for private use only.  It is prohibited for any other use and cannot be resold or rented individually.  All other rights reserved.  Unless expressly authorized in writing by the copyright

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

owner, any copying, exhibition, export, distribution or other use of this product or any part of it is prohibited."

9.     Disney knows that these representations are false.  Furthermore, Disney's attempt to control the disposition of the Combo Pack components, even after Disney sells them to a Disney-authorized distributor or a retailer, is an illegal abuse of its copyrights and its dominant position in the industry.

10.     These actions have harmed Redbox by reducing its sales, harming its reputation and goodwill, raising its acquisition costs, and causing its investment in offering Disney digital movies to be lost.  Even worse, they are harming consumers by artificially raising or maintaining prices and forcing consumers to purchase higher-priced movies from a service like iTunes or a brick-and-mortar retailer.

11.     Redbox therefore brings this action: (a) for a declaration that Defendants cannot enforce their attempts to restrict rental and resale of their products, so that Redbox and others are free to rent and sell the discs and digital movie codes sold in Combo Packs; (b) for a declaration that the copyrights (including but not limited to those for the works listed on Exhibit A to this complaint) that Disney has and continues to misuse are unenforceable; (c) to enjoin Disney from falsely stating that Combo Pack components, including digital movie codes, may not be rented or resold and from interfering with Redbox's purchase of Disney titles on the open market; (d) for corrective advertising to remedy Disney's false statements; (e) to obtain compensation for Redbox's damages, recoupment of Defendants' wrongfully-gained profits, and punitive damages; and (f) for Redbox's fees and costs incurred in bringing this action.

### THE PARTIES

12.     Plaintiff Redbox Automated Retail, LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business at One Tower Lane, Suite 900, Oakbrook Terrace, Illinois 60181.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

13.     Defendant Buena Vista Home Entertainment, Inc. is a corporation incorporated under the laws of the State of California with its principal place of business in Burbank, California.  BVHE is a subsidary of The Walt Disney Company responsible for distributing content produced by The Walt Disney Company or its subsidiaries, primarily through third-party distributors and retailers.

14.     Defendant Disney Enterprises, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California.  Disney Enterprises claims to hold the copyright in a number of the titles that are distributed in Combo Packs.

15.     Defendant Lucasfilm Ltd. LLC is a limited liability company formed under the laws of the State of California with its principal place of business in San Francisco, California.  Lucasfilm claims to hold the copyright in a number of the titles that are distributed in Combo Packs.

16.     Defendant MVL Film Finance LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business in Burbank, California.  Marvel claims to hold the copyright in a number of the titles that are distributed in Combo Packs.

17.     Defendant Movies Anywhere LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business in Burbank, California.  Movies Anywhere operates a "digital locker" service from which consumers can download movies from participating studios purchased from participating digital retailers or using codes purchased from brick-and-mortar retailers.  The Movies Anywhere service is built upon the same digital rights system architecture, dubbed "Keychest," that Disney developed for its original "Disney Movies Anywhere" service.  Movies Anywhere is staffed by Disney employees who operate out of Disney's Burbank, California facilities.  In its recruitment of employees to work for the Movies Anywhere service, Disney indicates that Movies Anywhere is a "legal entity of the Walt Disney Studios."

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

-6-     FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

18.     Collectively, the Defendants listed above are each part of the Walt Disney Company conglomerate, which had over $55 billion in revenue in 2017 and includes such properties as the American Broadcasting Company (ABC), ESPN, Pixar, Lucasfilm and Marvel.

19.     Defendant Anderson Merchandisers, LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business in Plano, Texas.  On information and belief, Anderson is authorized by at least one of the big box retailers to perform in-store merchandising services for suppliers, and Anderson performs those services on Disney's behalf.  As discussed further below, Redbox is informed and believes that Anderson has acted at the direction of BVHE to prevent the retailer from selling Disney products to Redbox.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction over Redbox's federal claims under 28 U.S.C. § 1331 and 15 U.S.C. §§ 15, 26 and 1121.

21.     The Court has supplemental jurisdiction over Redbox's state-law claims under 28 U.S.C. § 1367.

22.     The Court may and should exercise personal jurisdiction over the Disney Defendants because they are organized and/or have their principal places of business in California.

23.     The Court may and should exercise personal jurisdiction over Anderson because, among other things, Redbox is informed and believes that Anderson conducts substantial business within California.  This action also arises from torts and antitrust violations that Anderson has committed within the State of California, and which have harmed Redbox and consumers within the State of California.

24.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (3) as well as 15 U.S.C. § 22.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

# FACTUAL ALLEGATIONS

## A. Redbox's Consumer-Friendly Innovations

25.     Redbox began in 2002 when McDonald's tested low-cost rentals from self-service DVD kiosks in its Washington, D.C.-area stores.  The idea was to make "dinner and a movie" affordable for middle- and working-class families.

26.     Redbox's operating premise is simple: make movies available through their efficient kiosks, and pass those savings on directly to the consumer.  It is able to pass those savings on by eliminating overhead and simplifying the rental process.  Instead of buying or building, and maintaining and staffing, brick-and-mortar stores like Blockbuster Video of yesteryear, Redbox puts the movies it has purchased into small, fully automated self-service kiosks.  In addition to eliminating overhead, this allows Redbox to nimbly relocate to match demand rather than be tied to real estate.

27.     Each kiosk holds more than 600 movies, often representing up to 200 different titles.  A consumer can browse available titles using a video screen in the kiosk, select the desired movie, pay with a credit card at the kiosk, and then receive the movie right then and there.  Or a consumer can browse for titles online, reserve a movie, and then pick it up at the kiosk.  Redbox also sells used discs, again at discounted prices.

28.     Consumers have proven their love for Redbox.  Within two years of its 2002 test run, Redbox was renting over 1 million DVDs a month across 800 locations.  It rented its 1 billionth disc in 2010.  Currently, Redbox rents about 1 million discs a day from over 41,000 kiosks nationwide, in locations ranging from big-box stores to grocery stores and fast-food restaurants to dollar stores.

## B. The Structure of the Market in Which Redbox Operates

29.     Redbox operates in the nationwide market for rentals and sales of movies on DVD, Blu-ray and digital platforms for home entertainment.

30.     Rentals and sales of movies on DVD, Blu-ray and digital platforms for home entertainment constitute a distinct product market because sustained increases

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

or decreases in the price of any one of those offerings affects demand and pricing for the others.  For example, before Redbox provided any digital offerings, Disney itself claimed that the price of rentals from Redbox affected the prices for Disney's video-on-demand—i.e., digital platform—offerings.  It has also been widely reported in the press that consumers substitute rentals for purchases of movies for home viewing.

31.     The differentiated and specific demand for DVDs, Blu-ray discs and digital movies cannot be satisfied by other types of home entertainment, such as games or books.  For example, DVDs, Blu-ray discs and digital movies generally require or can be used with equipment different from that needed for games, books and other forms of home entertainment.  They are also sold at different price points, and sustained increases or decreases in the prices of movies on DVD, Blu-ray and digital platforms do not affect the prices of games, books or other forms of home entertainment.

32.     The differences between cable and digital television on the one hand, and movies for home entertainment on the other, are also so pronounced that they are not reasonable substitutes for each other.

33.     Similarly, there is differentiated and specific demand for rentals and sales of movies on DVD, Blu-ray and digital platforms that cannot be satisfied by theatrical releases or other forms of entertainment outside the home.  Consumers choose to see theatrical releases for the large screen, food and beverage offerings, and other aspects of the "theater experience" that cannot be satisfied by a home viewing.  Conversely, the convenience of home viewing cannot be matched by a theatrical viewing.

34.     Disney is the largest of the six "major" movie production studios.  Its share of recent box office receipts exceeds 30%.  Disney's acquisition of Fox will provide Disney with a market share of around 50% at the box office, dwarfing that of the other major studios.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

35.    Disney's share of movies rented or sold for home entertainment is even greater.  Disney has a higher proportion of movies with a lengthy shelf life than other studios do.  Consumers watch classics like *Frozen*, *Cinderella* and the *Star Wars* franchise over and over again, often collecting them and introducing childhood favorites to their own children.

36.    Disney also has a dominant position as a producer of home entertainment due to the unique strength of the Disney brand.  Disney was named "The Most Powerful Brand in the World" in 2016 by <u>Brand Finance</u>, which noted that Disney's "now dominant position is the result of its many acquisitions and the powerful brands it has brought under its control."  Even Disney has acknowledged that its "incomparable collection of strong brands" positions it "to lead the industry."

37.    That brand strength adds to Disney's market power.  Whereas the average consumer generally does not identify specific movies with particular studios, consumers can instantly identify a hit such as *Frozen* as a "Disney movie."  Consumers accordingly expect to be able to find Disney movies when they shop for movies at a store or rental outlet.  Disney films—including those from its Marvel, Lucasfilm and Pixar studios—are must-carry titles for retailers.  Each Disney-owned title is a unique product that other movie studios cannot offer.

38.    On information and belief, this gives Disney substantial leverage over its distributors and retailers, which will only be exacerbated by its planned acquisition of Fox.  As one industry publication has noted:

> The joint forces between Disney and 20th Century Fox,
> Fox 2000 and Fox Searchlight are the closest we've
> seen to a monopoly in Hollywood, and puts the studio
> in a position to expand its shelf space across all
> entertainment ancillaries, not just at the box office but
> also at Walmart and other retailers selling DVDs and
> merchandise, in international TV deals (as existing
> Disney and Fox deals expire), and premium pricing

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

> across all distribution channels. It will be daunting for
> rivals to compete.

Anthony D'Alessandro, "How the Overwhelming Disney-Fox Movie Lineup Will Impact Rivals And Exhibitors," deadline.com (Dec. 14, 2017) http://deadline.com/2017/12/disney-fox-merger-exhibitors-movie-theaters-combined-release-schedule-marvel-star-wars-pixar-1202221594/.

39.     All of these factors combine to give Disney, and specifically Defendant BVHE, market power in the nationwide market for rentals and sales of movies on DVD, Blu-ray and digital platforms for home entertainment.

40.     Defendant BVHE is responsible for distribution of Disney home entertainment releases.  On information and belief, BVHE sells both through distributors and directly to major retailers.  On information and belief, BVHE's distribution and/or licensing agreements provide that it earns a share of its distributors' and/or retailers' revenue.  On information and belief, whether or not a distribution agreement contains a revenue sharing provision, BVHE may also charge higher wholesale prices if its retailers are able to charge higher prices to consumers.

C. <u>Redbox's Mutually Beneficial Partnerships with Other Major Studios</u>

41.     A few major movie studios immediately embraced Redbox and quickly signed distribution deals, realizing that Redbox provides value to studios in a number of ways.  Most obviously, Redbox purchases millions of discs, representing substantial direct revenue for those studios.  It also brings new consumers into the fold.  Many consumers who rent or buy Redbox's discs simply could not afford to regularly pay the high retail prices typically required to buy a new disc or digital movie from another vendor.  Such consumers are generally not willing to pay a premium for features that come with, for example, a subscription service, and are willing to travel to a kiosk in order to save on price.  Redbox's sales and rentals therefore represent additional customers, and additional dollars, for the movie studios.

42.    While some of the other major studios did not see that value at first, Redbox ultimately was able to come to agreements with all of them except Disney. Since then, Redbox and the major studios have maintained mutually beneficial partnerships that increase exposure and sales for the studios, while providing more consumers with premium entertainment at a price they can afford.

D.    <u>Defendants Try to Stop Redbox from Renting or Selling Disney Products in Order to Prop Up Prices</u>

43.    Disney, and specifically its distribution subsidiary, Defendant BVHE, has never accepted Redbox's value proposition.  Instead, it views Redbox's low prices as a threat to its own ability to maintain higher prices.

44.    In 2012-13, Redbox attempted to negotiate a vendor agreement with BVHE.  BVHE was not willing to do so unless Redbox agreed that it would not rent or sell new releases until at least 28 days after the initial release date.  But agreeing to such a term would have substantially impaired Redbox's ability to offer new releases of products distributed by BVHE when people want those products the most.  BVHE's proposal thus would have seriously and negatively impaired Redbox's ability to compete to rent and sell those titles.  Redbox has periodically tried to reach a distribution agreement with Disney since that time, but to no avail.

45.    Instead, to ensure that its customers nevertheless continue to have access to popular Disney titles when they want them and at the price they have come to expect, Redbox lawfully purchases Disney movies from third parties.  Redbox buys movies at full price when they are released for sale to the public and quickly merchandises them for delivery through the Redbox kiosks.  Sometimes, and despite Disney's interference, Redbox has been able to buy Disney titles from third-party distributors.  But for the most part, Redbox purchases Disney titles at retail, just like any other consumer.  Redbox employees go into a big-box store, grocery store, or other establishment, pick copies up off the shelves a few at a time (leaving sufficient

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  inventory for the retailer's other customers), and buy them at the counter at full

2  retail prices.

3         46.    The most cost-effective way for Redbox to purchase a Disney title is by

4  purchasing a "Combo Pack." Combo Packs generally consist of a DVD, a Blu-ray

5  disc, and a digital movie that can be accessed with a digital code contained in the

6  Combo Pack. For years, and with BVHE's full knowledge, Redbox has lawfully

7  bought Combo Packs and then rented and sold the DVDs and Blu-ray discs

8  separately. Combo Packs that Redbox has purchased and that are the subject of

9  Disney's misrepresentations and other misconduct described herein are included in

10 Exhibit A.

11        47.    In the summer of 2017, Redbox began providing digital movies that it

12 had purchased to its customers for free as a bonus with certain rental titles, in a

13 campaign called "Surprise and Delight." Redbox expanded that initiative at its

14 kiosks in October 2017 when it began selling digital movies from the Combo Packs.

15 Each digital movie code can be redeemed only a single time through either

16 RedeemDigitalMovie.com, a website purportedly controlled by BVHE, or through

17 the website of Defendant Movies Anywhere, a consortium owned and operated by

18 The Walt Disney Company. Redbox often sells these digital movies for under $10,

19 or about half the price of a digital movie bought from a digital retailer.

20        48.    Over the past couple of years, however, BVHE has intensified its

21 efforts to stop Redbox from renting or selling Disney titles.

22        49.    Redbox is informed and believes that BVHE has pressured both

23 distributors and retailers not to sell Disney titles to Redbox.

24        50.    Redbox at one time procured approximately 50% of the Disney titles it

25 purchased through one third-party distributor. In fact, Redbox procured 100% of its

26 copies of *Star Wars: The Force Awakens* from that distributor in 2016. Redbox is

27 informed and believes that BVHE found out about those purchases and then coerced

28 the distributor into sharing its customer list. On information and belief, BVHE

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

subsequently reduced that distributor's allocation of Disney titles, and Redbox is now unable to procure Disney titles through that very distributor. Redbox has similarly been unable to procure Disney titles from other distributors since that time.

51.     Disney's actions have raised Redbox's costs by preventing it from obtaining volume discounts and by requiring it to train and pay staff to manually purchase Disney product from retail outlets. Procuring from distributors rather than retailers would also have allowed Redbox to receive product on or before the release date, enabling Redbox to have the movies stocked by the release date and thus obtain additional rentals. Most importantly, Disney's actions prevent Redbox from obtaining enough copies to meet consumer demand. As a result, Redbox's customers are often disappointed to find that their local Redbox kiosk is out of stock when they go to rent a Disney title.

52.     But BVHE did not stop there. In October of 2017, a major retailer in the Southwest told Redbox, "It is actually in our contract agreement with Disney that we do NOT sell to Redbox vendors . . . ."

53.     As recently as March 2018, that same retailer told Redbox that it will still not sell Disney titles to Redbox. On information and belief, that is because it was coerced into agreeing with BVHE that it would not sell Disney titles to Redbox. Redbox had partnered with that retailer for the last nine years, and had been able to buy dozens or hundreds of copies of Disney titles from each of the retailer's stores as desired. It would not be in the retailer's interest to sell fewer copies than it would otherwise sell, unless there was countervailing pressure from Disney.

54.     Redbox is informed and believes that BVHE also recently began working with Defendant Anderson to prevent Redbox from purchasing Disney titles from other retailers. When Redbox attempted to purchase copies of *Coco* and *Thor: Ragnarok* from a national big box retailer in late February and early March 2018, representatives from Anderson confronted Redbox's employees in stores across the country.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

55.     On February 27, 2018, a Redbox employee was threatened multiple times with imprisonment in a federal prison for purchasing Combo Packs of *Coco*. Upon information and belief, the threats were made by a representative of Anderson or Disney.

56.     On information and belief, faced with threats from BVHE and Anderson that this national big box retailer would also be deprived of Disney product if it sold to Redbox, the retailer agreed with BVHE and Anderson that it would restrict Redbox's access to Disney movies already sold to the retailer to five copies per movie.  Some of the retailer's locations even refused to sell any Disney products at all to Redbox.  And, based on information and belief, BVHE and Anderson will enforce this limitation even more strictly for future purchases throughout the retailer's chain of stores.

57.     Redbox had previously been able to purchase copies from that retailer's stores without any restrictions.

58.     On information and belief, Redbox is not the only company to experience the effects of Disney's anticompetitive conduct.  BVHE's and Anderson's limitation on the numbers of copies available for purchase will hurt "Mom and Pop rental companies" as well, reducing the amount of consumer options available on the market.  Further, on information and belief, BVHE prohibits other retailers and/or distributors from selling to other rental companies—even though those customers take title to the Disney products—reducing the consumer options available on the market.

59.     On information and belief, Disney seeks to limit the number of rentals available in the market because it sees rentals as a threat to maintaining high sales prices.

60.     In addition to disrupting Redbox's supply relationships, on information and belief, BVHE, in conjunction with Defendants Disney, Marvel and Lucasfilm, falsely states on certain of the packaging of Disney Combo Packs, as well as on the

digital movie codes contained therein, that the individual components of the Combo Packs may not be rented, resold or transferred separately.

61.     On information and belief, BVHE falsely states on the RedeemDigitalMovie.com website that consumers, including Redbox, may not resell as they wish the digital movie codes, and thus the digital movies, they have bought and paid for, and that it owns "[a]ll digital movie codes."  The website further states that "digital codes are authorized for redemption only by an individual who obtains the code as part of a combination disc + code package . . ., or by a family member of that individual."

62.     Movies Anywhere's terms and conditions for the Movies Anywhere website falsely state that (1) it or its affiliates or other studios own the digital movie codes, (2) the digital movie codes may not be sold separately, and (3) the codes "may be redeemed only by an individual who obtains the code in the original combination disc + code package, or by a family member of that individual."

63.     On information and belief, BVHE and Movies Anywhere make these false statements to prevent retailers like Redbox from buying or selling Disney titles and to intimidate consumers who lawfully attempt to redeem the digital movies purchased from Redbox.

64.     Defendants know or should know that their statements on their packaging and websites are false.  Defendants know that Redbox buys the Combo Packs outright, paying Disney and its retailers and distributors their full due. Redbox therefore owns the DVDs, Blu-ray discs and digital movie codes that are included in the Combo Packs.  As the lawful owner, Redbox may dispose of each component of the Combo Packs as it pleases, just like any other consumer.

65.     Nor may Disney lawfully impose restrictions on the use of the codes *after* the codes have already been bought and paid for.  When consumers—including Redbox—purchase Combo Packs at retail, they do not enter into any agreements with any Disney entity not to resell the digital codes or otherwise dispose of any part

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

of a Combo Pack. Disney's attempts to enforce such restrictions at a later time through language on the websites used to redeem the codes violate a number of legal principles and public policies, including the first sale doctrine (under which consumers are statutorily entitled to resell copyrighted works) and the prohibition on enforcing unconscionable contractual terms. By claiming otherwise, Disney is attempting to leverage its copyrights to expand its right to control distribution of Disney titles beyond that granted by the Copyright Act, which is an act of copyright misuse.

66.     RedeemDigitalMovie.com has also required anyone attempting to redeem a digital movie code to "represent that you are the owner of the physical product that accompanied the digital code at the time of purchase." It claimed the right to invalidate the codes of any person who was not currently the owner of the physical product. The Movies Anywhere website similarly allowed redemption of digital codes only from "a Digital Copy enabled and Movies Anywhere-eligible physical products that is owned by you." Defendants therefore not only attempted to prohibit resale of the digital codes, but also burdened consumers' ability to resell or otherwise dispose of the DVD and Blu-ray disc included in a Combo Pack as well. Defendants' attempts to leverage its copyrights to burden the resale of DVDs and Blu-ray discs constitutes a further instance of copyright misuse.

67.     Defendants BVHE, Disney, Lucasfilm and Marvel nevertheless filed a lawsuit against Redbox on November 30, 2017 for contributory copyright infringement, breach of contract, tortious interference with contracts, false advertising, and unfair competition and moved for immediate injunctive relief against Redbox. Among other things, Defendants sought to enforce the purported prohibitions on transferring the individual components of the Combo Packs as a binding contract formed between BVHE and every purchaser of a Combo Pack.

68.     Defendants also argued that consumers who used the digital codes without owning the other components of the Combo Pack violated the Copyright

Act.  Defendants claimed that consumers who purchased Combo Packs could be subject to such restrictions because they did not in fact purchase a digital copy or a digital movie, despite the prominent language on the Combo Packs advertising just that:



69.    Disney followed this action with further false statements in the press that Redbox's sales of the digital codes contained in the Combo Packs were unlawful and unauthorized.

70.    Recently, Defendants filed an amended complaint withdrawing their claims for breach of contract, tortious interference with contract, false advertising and unfair competition.  This is an implicit acknowledgment that the website terms Defendants seek to enforce are not agreed to by consumers at the time of purchase, but instead are unconscionable and unenforceable attempts to impose additional terms after consumers have already paid for Disney's product.

E.    Defendants' Actions Are Harming Competition

71.    The harm from Defendants' conduct is not limited to Redbox. Defendants' conduct harms competition and consumers as well.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

72.    Redbox occupies a unique position in the market for rentals and sales of movies on DVD, Blu-ray and digital platforms for home entertainment.

73.    Redbox's model of using fully automated, self-service kiosks allows it to price its rentals and sales substantially below the offerings of other movie retailers.

74.    On information and belief, Redbox is the only company that operates movie kiosks and offers correspondingly low prices in all fifty states.

75.    Disney is unlawfully using its market power to reduce output and prevent Redbox from meeting consumer demand for Disney titles.  Only a company with substantial market power could dictate terms to major national big box retailers that ultimately lead those retailers to sell fewer units.

76.    But for Disney's interference, Redbox would have purchased, rented and sold additional Disney movies to additional consumers.

77.    Because Redbox specializes in renting and then selling new releases to cost-sensitive customers who are not being adequately served by other outlets, many of its customers are unable to turn to other retailers for Disney titles.

78.    Redbox's inability to purchase adequate numbers of Disney movies therefore represents an absolute reduction in output in this market.

79.    Where Redbox does compete with other channels for retail distribution of Disney movies, Disney itself has acknowledged that Redbox acts as a check on the retail price of Disney movies.  BVHE has in fact admitted to Redbox in the course of ultimately unsuccessful business negotiations that it believed that Redbox's rental prices were depressing the prices of video-on-demand Disney titles.

80.    Disney's misconduct is not limited to Redbox.  It directly affects other low-cost rental options as well.  This reduction in low-cost alternatives to more expensive sales and digital rentals reduces output and raises prices for consumers.

81.    Disney has admitted that the purpose of its litigation against Redbox is to allow Disney to maintain higher retail prices for its digital titles and thus, make

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

more money.  In a declaration submitted by BVHE's president, BVHE contends that a "consequence of Redbox's undercutting of [Disney's] licensee prices is that [the more expensive] licensees will likely sell fewer digital downloads of Disney movies and Disney will earn less revenue."  BVHE also complains that if Redbox offers low prices, consumers may come to expect low prices, which Disney seeks to avoid:

> If consumers come to expect that they can buy unauthorized digital downloads for below market prices, this could have a permanent and irreparable negative impact on consumers' expectations and relationships with both Disney and its authorized licensees. Consumers will come to believe that below market pricing for a digital copy of a movie from an unauthorized service is legitimate, adversely affecting consumers' perception of authorized services.

82.    Remarkably, BVHE even complains, "The low price may lead consumers to believe that Disney's online content is somehow inferior to that of other studios."

83.    Disney's actions to inflate and maintain higher prices are part and parcel of its push to move away from distributing its content through third parties and towards providing content "direct-to-consumer."  Disney is seeking to expand its role in the distribution market itself as a competitor to retailers like Redbox and Netflix, and, on information and belief, to eventually remove third-party retailers from the distribution chain altogether.  Disney wants consumers to be inured to higher prices so that they will not object to them once Disney expands into that market.

84.    Disney is moving direct-to-consumer in part through its acquisition of Fox, which will give Disney a majority stake in the streaming movie service Hulu. Disney also plans to launch a separate streaming service in 2019.

85.    On information and belief, that is why Disney terminated its distribution deal with Netflix in August 2017.  Disney's President Bob Iger has

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

-20-
FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

stated that he is also considering ending licensing deals with Netflix, as well as with other distributors:

> [Fox has] a relationship with Netflix as well.  But again, we will be looking at more direct to consumer opportunities for our company and if that requires us to wean the businesses and relationships with other distributors, then that's what we will do, just as we did with Netflix.

Natalie Jarvey, Georg Szalai, "How Disney Will Benefit From Becoming Hulu's Majority Owner Via Its Fox Deal," Hollywood Reporter (Dec. 14, 2017), https://www.hollywoodreporter.com/news/how-disney-will-benefit-becoming-hulus-majority-owner-fox-deal-1067567.

86.     And while Disney ramps up its move further into the post-theatrical distribution space, it will have even greater incentive and ability to pressure distributors and eliminate low-cost competition in that industry in the meantime.

87.     On information and belief, Disney does not realize procompetitive efficiencies by preventing Redbox from renting or selling Disney titles.  This is not a case where an exclusive supply agreement with a distributor or retailer creates efficiencies, or rewards retailers for investing in advertising a product line.  This is instead a bald attack on the market's most successful low-cost competitor in order to maintain higher prices.

88.     Typically, a distributor or retailer might require an exclusive supply relationship with a seller in order to, for example, assure stable supply or hedge against volatile rises in the price of a commodity.  Here, however, it is BVHE, not distributors and retailers, that is demanding that Redbox be prevented from competing.  In fact, a manager from the national big box retailer from which Redbox purchases Combo Packs told a Redbox employee that the agreement to limit sales to Redbox was not the retailer's idea, but instead came from Disney.

89.     Another of that retailer's employees noted that there would not be enough room on the shelves for all of their Disney content if Redbox was not

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

permitted to purchase more than five titles.  Similarly, many managers noted their desire to sell to Redbox with statements like, "I'm not walking away from a $2,000 Tuesday morning sale," and, "A sale is a sale."  Disney's actions reduce revenue to its retailers and distributors.  The retailers and distributors do not benefit, nor does the purchasing public benefit.

90.     Nor is Disney reaping any of the efficiencies that can flow to a seller in a typical exclusive dealing arrangement.  Disney is not, for example, reducing transaction costs by agreeing to work with only one distributor or retailer.  Its agreements are exclusive only in the sense that it restricts sales to Redbox and other rental outlets and requires its distributors and retailers to do the same.

F.  <u>Defendants' Actions Are Harming Redbox and Its Customers</u>

91.     Defendants' actions are impeding or preventing Redbox's lawful purchase, rental and sale of Disney movies and raising its acquisition costs.  And the impact of that harm is not limited to the reduced revenue and profit from those lost rentals and sales.  On information and belief, when a Disney title is not available from Redbox, Redbox's reputation and goodwill are irreparably harmed with each disappointed customer and with each potential Redbox customer who learns of that unavailability.  In addition, on information and belief, Disney's falsely-premised accusations in a number of public forums that Redbox has engaged in unlawful conduct is also irreparably harming Redbox's reputation and goodwill with its customers and among the consumer public, all to the detriment of Redbox's ongoing business operations.

92.     Redbox's entry into the digital market is also being harmed by Disney's actions.  Because Disney is improperly interfering with Redbox's supply and impeding Redbox's ability to sell Redbox's lawfully acquired Disney digital movies, consumers are being dissuaded from looking to Redbox as a source of titles that are in high demand.  Compared to DVDs and Blu-ray discs, digital downloads are a relatively new technology.  However, the popularity of digital downloads is

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

growing, and Redbox's inability to offer Disney digital movies during this phase of growth, particularly when Disney is launching its own streaming service, could permanently harm Redbox's ability to participate in the digital download marketplace.

93.     Redbox has also been unable to recoup its investment in Disney digital movie sales.  Substantial time and effort has been spent over the last year preparing the computer systems, product databases, kiosks, and staff necessary for Redbox to be able to merchandise, advertise, and fulfill sales of Disney digital movies.  Over $700,000 has been spent in this effort.

*     *     *

94.     In short, Disney seeks to stifle competition and eliminate low-cost options in order to maximize the prices that it and its retailers can charge consumers. Stopping Redbox's sale and rental of Disney titles is a means to illegally restrict the market at the expense of both Redbox and the consuming public.

**CAUSES OF ACTION**

**First Cause of Action: for Declaratory Judgment**<br>**(Against all Defendants)**

95.     Redbox incorporates by reference the allegations in paragraphs 1-94 above as if set forth fully herein.

96.     Redbox brings this claim for declaratory judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

97.     Throughout its history, Redbox has purchased, rented, and resold movies, including tens of millions of Disney movies.

98.     Among its purchases have been millions of Combo Packs for Disney titles.  Redbox is informed and believes that tens of millions of Combo Packs containing Disney movies have been sold to other consumers.

99.     The Combo Packs contain language on their packaging that is largely illegible, irrelevant to the terms of Redbox's and other consumers' purchases from retailers, and unenforceable, including the following:

    a.  "This product is authorized for private use only.  It is prohibited for any other use and cannot be resold or rented individually.  All other rights reserved.  Unless expressly authorized in writing by the copyright owner, any copying, exhibition, export, distribution or other use of this product or any part of it is prohibited."

    b.  "Codes are not for sale or transfer."

100.    Websites purportedly operated by Defendants BVHE and Movies Anywhere contain similarly unenforceable language, including the following:

    a.  "All digital movie codes are owned by Buena Vista Home Entertainment, Inc. - Digital codes originally packaged in a combination disc + code packages may not be sold separately and may be redeemed only by an individual who obtains the code in the original combination disc + code package, or by a family member of that individual."

    b.  "Digital codes originally packaged in combination disc + code packages may not be sold separately and may be redeemed only by an individual who obtains the code in the original combination disc + code package, or by a family member of that individual. The digital codes are owned by Participating Studios, their affiliates, or other licensors."

101.    Notwithstanding the well-settled unenforceability of these terms, Disney does not disclose the unenforceability of these terms, nor does it disclose the existence, much less the unenforceability, of these terms to consumers in its own online store.

102.    Additionally, Redbox is informed and believes that Disney does not have agreements with its distributors and retailers that require them to disclose to

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Redbox and other consumers the terms that Defendants contend apply to the purchase of the Combo Packs or to obtain assent to those terms from them.

103.   Defendants have nevertheless sought to enforce the above terms as binding contracts and may do so again in the future.

104.   Based upon the foregoing, a present and actual controversy exists between Redbox and Disney concerning the enforceability of those terms, the propriety of the terms' presence on the packaging of the Combo Packs, and Disney's failure to adequately disclose and obtain assent to those terms from Redbox and consumers.

105.   Accordingly, Redbox seeks a declaration and order that:

    a.  The sum and substance of the terms listed above in paragraphs 99-100 are unenforceable and shall not appear on the packaging of any Combo Packs that Defendants or anyone acting on their behalf manufacture, distribute, or sell in the future, or any websites for the redemption of digital movie codes;

    b.  Defendants shall take reasonable steps to provide corrective advertising to each of the distributors and retailers with physical inventory of Disney products, which shall be used to cover over or otherwise correct and eliminate the unenforceable terms from the packaging.

    c.  Defendants shall be required to give notice of the unenforceability of the false and unenforceable terms on the Combo Packs and websites to Combo Pack purchasers.

### Second Cause of Action: Copyright Misuse
### (Against Disney Enterprises, Lucasfilm and Marvel)

106.   Redbox incorporates by reference the allegations in paragraphs 1-105 above as if set forth fully herein.

107.   Disney Enterprises, Lucasfilm and Marvel claim to hold copyrights in the movies that are distributed through sales of Disney Combo Packs.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

108.   Disney Enterprises, Lucasfilm and Marvel have used and continue to misuse those copyrights to illegally expand the monopoly that the Copyright Act grants in their copyrighted works and to violate public policy.

109.   Disney Enterprises, Lucasfilm and Marvel have licensed their copyrights to BVHE and allowed BVHE to use those copyrights to violate Section 1 of the Sherman Act and the Cartwright Act by coercing retailers, distributors and Defendant Anderson into entering into agreements that unreasonably restrain trade in the relevant market.  Similarly, BVHE's distribution agreements wrongfully foreclose distributors and/or retailers from selling to Redbox and other rental outlets that compete with Defendants' preferred, higher-priced retailers.

110.   Disney Enterprises, Lucasfilm and Marvel also allow BVHE to use their copyrights to purport to impose unconscionable contract terms restricting transfer of digital movie codes, despite that those terms are raised only after consumers have already purchased the digital movie codes, in violation of public policy.

111.   On information and belief, BVHE passes title to the Combo Packs to its distributors and retailers.  BVHE's and Anderson's coercion, threats and anticompetitive agreements prohibiting them from selling Combo Packs to Redbox therefore also attempt to expand the scope of Defendants' copyrights and are acts of copyright misuse.  That is particularly the case given BVHE's intent to impose an artificial price floor on sales and rentals of Disney titles.

112.   The Copyright Act provides that owners of a copy of a copyrighted work are entitled to rent, resell or otherwise dispose of that copy.  By attempting to prohibit purchasers of DVDs, Blu-ray discs and digital movies in Combo Packs from renting, reselling or otherwise disposing of those copies as they desire, Disney Enterprises, Lucasfilm and Marvel, through their distribution agents BVHE and Movies Anywhere, violate the Copyright Act's first sale doctrine, a further act of copyright misuse.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

113.   Redbox therefore seeks a declaration that Defendants may not enforce their copyrights, including but not limited to those for the works listed on Exhibit A, until their misuse ends.

**Third Cause of Action: Tortious Interference with Prospective Economic Advantage**
**(Against BVHE and Anderson)**

114.   Redbox incorporates by reference the allegations in paragraphs 1-113 above as if set forth fully herein.

115.   For years, Redbox has continuously purchased Disney titles from numerous retailers and third-party distributors.  Other distributors and retailers sell Disney titles on the open market and, on information and belief, would sell to Redbox as well if not for BVHE's and Anderson's threats and other intentional misconduct.  A stable source of fairly-priced supply is critical to Redbox's business.

116.   On information and belief, BVHE and Anderson are aware of Redbox's business relationships with its retailers and its distributors.

117.   BVHE and Anderson have intentionally and wrongfully disrupted Redbox's relationships with Redbox's supply vendors, including by conditioning the sale of goods on forbearance from exercising rights provided by the Copyright Act, by effectively orchestrating a boycott by their distributors and retailers against Redbox, and by inserting provisions into merchandising and other materials included in the sale of Combo Packs that are illegal and unenforceable.

118.   On information and belief, BVHE, in certain cases working with Anderson, has threatened multiple retailers to prevent them from selling to Redbox.  BVHE has also, on information and belief, reduced the supply of Disney movies to distributors who sell to Redbox in order to prevent Redbox from obtaining copies.  Further, on information and belief, BVHE has included language in its contracts with retailers and/or distributors unlawfully forbidding them from selling Disney titles to Redbox.  Anderson has even photographed and videotaped Redbox

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

employees, and threatened at least one of them with time in federal prison, in order to disrupt Redbox's relationships with its vendors.

119.   BVHE has also falsely stated that Redbox's rental and sale of products included in Disney Combo Packs, and in particular the digital movie codes, are unauthorized and illegal, further damaging Redbox's relationships with its supply vendors.

120.   As a result of BVHE's and Anderson's misconduct, Redbox has been unable to procure Disney titles from distributors and from multiple retailers.

121.   But for BVHE's and Anderson's intentional misconduct, Redbox's relationships would continue to benefit Redbox economically in the future, as the distributors and retailers were previously willing to meet Redbox's need for titles.

122.   BVHE's and Anderson's intentional misconduct is wrongful independent of the interference with Redbox's business relationships.  BVHE's and Anderson's threats and other misconduct towards Redbox's suppliers and Redbox employees involve intimidation and coercion, as well as abuse of Disney's dominant industry position and market power.  They also involve violations of the Sherman Act and Copyright Act, copyright misuse, false advertising and unfair competition. All of these actions were taken by Defendants in order to wrongfully eliminate competition and prop up prices for their own products.

123.   BVHE's and Anderson's intentional misconduct has damaged Redbox by stopping Redbox from obtaining supply sufficient to meet its consumer demand, raising its procurement costs, and by harming its reputation and goodwill.  Redbox is also threatened with continuing substantial and irreparable injury for which there is no adequate remedy at law, entitling Redbox to injunctive relief.

124.   On information and belief, BVHE's and Anderson's actions were done with malice, oppression, and fraud and in wanton disregard for Redbox's rights. Redbox is therefore entitled to punitive damages under California Civil Code § 3294

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

to punish BVHE and Anderson and to deter it from engaging in similar conduct in the future.

### Fourth Cause of Action: False Advertising Under the Lanham Act
### (Against BVHE and Movies Anywhere)

125.    Redbox incorporates by reference the allegations in paragraphs 1-124 above as if set forth fully herein.

126.    BVHE and Movies Anywhere distribute Disney movie content, including Combo Packs and digital movies, throughout the United States, and thus the packaging and other commercial promotion are distributed within interstate commerce.

127.    BVHE falsely states that the components of Disney Combo Packs may not be rented, resold or otherwise transferred separately.

128.    BVHE falsely states on the RedeemDigitalMovie.com website that it owns the digital movie codes for the movies it sells and that purchasers of the digital movie codes are not free to resell those codes.  It also states that "digital codes are authorized for redemption only by an individual who obtains the code as part of a combination disc + code package . . ., or by a family member of that individual." Movies Anywhere falsely states (1) that it or its affiliates or other studios own the digital movie codes for the digital movies Disney sells and (2) that the codes, and thus the movies, may not be sold separately, and (3) that the codes "may be redeemed only by an individual who obtains the code in the original combination disc + code package, or by a family member of that individual."  Both BVHE and Movies Anywhere have also stated on their websites that digital codes may be redeemed only by the owner of the physical product included in a Combo Pack.

129.    On information and belief, BVHE and Movies Anywhere make these false statements on the packaging for or otherwise in connection with advertising and commercial promotion for Disney Combo Packs and digital movies to attempt

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

to divert sales away from Redbox and towards higher-priced distributors and retailers selected by Disney.

130.  BVHE has also falsely stated in the press that Redbox's sales of digital movie codes are unauthorized and unlawful.

131.  On information and belief, BVHE made that statement to attempt to increase its sales of, and the price for, Combo Packs and digital movies.

132.  On information and belief, BVHE's and Movies Anywhere's false statements have a tendency to deceive a substantial segment of consumers of Disney movie products.  This deception has a material impact on consumers.  Consumers are likely to be deceived into believing that Redbox does not have title to the components of Combo Packs it has purchased and therefore that consumers may not lawfully purchase those components from Redbox.  That is false.

133.  On information and belief, BVHE's and Movies Anywhere's intentional misconduct has damaged Redbox by reducing its sales, harming its reputation and goodwill, causing its investment in offering digital movie codes to be lost, and inhibiting Redbox's ability to recoup the costs of acquiring Disney movies. Redbox is also threatened with continuing substantial  and irreparable injury for which there is no adequate remedy at law, entitling Redbox to injunctive relief.

### Fifth Cause of Action: False Advertising Under California False Advertising Law (Against BVHE and Movies Anywhere)

134.  Redbox incorporates by reference the allegations in paragraphs 1-133 above as if set forth fully herein.

135.  California Business and Professions Code § 17500 et seq. prohibits false advertising.

136.  BVHE and Movies Anywhere have falsely stated that the components of Disney Combo Packs may not be sold or transferred separately.

137.  BVHE falsely states on the RedeemDigitalMovie.com website that it owns the digital movie codes for the movies it sells and that purchasers of the digital

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

movie codes are not free to resell those codes.  It also states that "digital codes are authorized for redemption only by an individual who obtains the code as part of a combination disc + code package . . ., or by a family member of that individual." Movies Anywhere falsely states (1) that it or its affiliates or other studios own the digital movie codes for the digital movies it sells and (2) that the codes, and thus the movies, may not be sold separately, and (3) that the codes "may be redeemed only by an individual who obtains the code in the original combination disc + code package, or by a family member of that individual."  Both BVHE and Movies Anywhere have also stated on their websites that digital codes may be redeemed only by the owner of the physical product included in a Combo Pack.

138.   BVHE and Movies Anywhere make these false statements on the packaging for and otherwise in connection with the disposition of Disney Combo Packs and digital movies.  On information and belief, their purpose in making these statements is to cause consumers to stop renting and purchasing from Redbox, to illegally interfere with purchasers' rights to rent or resell the digital movies, and to induce consumers to use higher-priced alternatives selected by BVHE and Movies Anywhere instead.

139.   BVHE has also falsely stated in the press that Redbox's sales of digital movie codes are unauthorized and unlawful.

140.   BVHE and Movies Anywhere know or should know that Redbox and other consumers have full title to each component of every Combo Pack it buys and may therefore rent, resell or otherwise dispose of those components as it sees fit.

141.   On information and belief, BVHE's and Movies Anywhere's intentional misconduct has damaged Redbox by reducing its sales, harming its reputation and goodwill, causing its investment in offering digital movies to be lost, and impeding Redbox's ability to recoup the cost of acquiring Disney movies.

142.   Redbox is entitled to injunctive relief and restitution under California Business and Professions Code § 17535.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

## Sixth Cause of Action:  Unfair Competition
### (Against All Defendants)

143.   Redbox incorporates by reference the allegations in paragraphs 1-142 above as if set forth fully herein.

144.   California Business and Professions Code § 17200 et seq. (the Unfair Competition Law) prohibits unfair competition; that is, unlawful, unfair or fraudulent business acts or practices.

145.   As described above, Defendants engage in unfair competition by coercing and agreeing with distributors and retailers not to do business with Redbox, and preventing Redbox from doing business with distributors and retailers, and by falsely stating that Redbox may not individually rent or sell DVDs, Blu-ray discs or digital movie codes that it buys in Combo Packs.

146.   Defendants' misconduct is unlawful because it violates the Sherman Act, Lanham Act, California's False Advertising Law, the Copyright Act and constitutes tortious interference with prospective economic advantage.

147.   Defendants' misconduct is unfair because it is contrary to legislatively declared policies, including those expressed in the Sherman Act, Copyright Act, Lanham Act and California's False Advertising Law.  In addition, it constitutes copyright misuse and tortious interference with prospective economic advantage.

148.   Furthermore, the harm to Redbox from Defendants' misconduct outweighs the utility of that misconduct.  As alleged above, Defendants' misconduct has damaged Redbox by reducing its rentals and sales, harming its reputation and goodwill, causing its investment in offering digital movie codes to be lost, and impeding Redbox's ability to recoup the cost of acquiring Disney movies. Consumers would also be hurt by the elimination of Redbox's low-price offerings.

149.   Defendants' misconduct has very little utility, however.  First, Redbox largely serves a customer base in which many would not otherwise be able to purchase Disney content, and Redbox pays full price for the Disney products that it

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

rents and sells to those customers.  Redbox's purchases from retailers help them sell all the Disney inventory they purchase.  If Redbox is not able to purchase the Disney Combo Packs, Disney's sales to those retailers will undoubtedly be substantially lower.  In each of the transactions where Redbox bought Disney Combo Packs, it paid what the retailers charged for those goods, and thereby fulfilled the revenue expectations the retailer and Disney necessarily had from those sales.

150.   Redbox's business also provides additional business to Defendants because Redbox's low prices reduce incentives to pirate and redistribute content for free.

151.   Further, when Redbox customers download movies using codes for digital copies of movies through one of Disney's download sites, Disney acquires valuable Redbox customer information that it would not receive if those customers had not purchased a digital copy of a movie for download.

152.   Defendants' misconduct is fraudulent because it is likely to mislead customers into wrongly believing that Redbox's sales of digital codes are unlawful.

153.   Redbox is entitled to injunctive relief and restitution under California Business and Professions Code § 17203.

## Seventh Cause of Action: Violation of Section 1 of the Sherman Act (Against BVHE and Anderson)

154.   Redbox incorporates by reference the allegations in paragraphs 1-153 above as if set forth fully herein.

155.   On information and belief, BVHE has entered into unlawful agreements with certain distributors and retailers prohibiting or otherwise limiting them from selling copies of Disney movie titles to Redbox.

156.   On information and belief, BVHE and Anderson have entered into an unlawful agreement and coerced at least one major national retailer into prohibiting purchasers from purchasing more than five copies of any Disney title.

157.   On information and belief, BVHE and Anderson have orchestrated these agreements to unlawfully eliminate Redbox and other low-cost alternatives as market competitors for the sole purpose of artificially restraining output and raising retail prices, leading to increased revenue to BVHE and an ability for BVHE to reap supra-competitive prices.

158.   Those unlawful agreements have and will continue to substantially and adversely impact and unreasonably restrain interstate commerce in the nationwide market for rentals and sales of movies on DVD, Blu-ray and digital platforms for home entertainment.

159.   On information and belief, there are no procompetitive justifications for BVHE's and Anderson's anticompetitive agreements.

160.   As a direct and proximate result of the unlawful agreements described above, Redbox has suffered economic injury in an amount to be determined at trial.

161.   Unless enjoined, Defendants' unlawful agreements are likely to persist and will continue to cause irreparable injury to Redbox and to consumers, for which Redbox and consumers will have no adequate remedy at law.

**Eighth Cause of Action: Violation of Prohibition Against Trusts Under the Cartwright Act (Against BVHE and Anderson)**

162.   Redbox incorporates by reference the allegations in paragraphs 1-161 above as if set forth fully herein.

163.   BVHE and Anderson have entered into and engaged in coercive and anticompetitive agreements and practices with distributors and retailers to restrain trade and prevent competition in and monopolize the relevant market defined above, in violation of the Cartwright Act, California Business and Professions Code § 16700, et seq.

164.    On information and belief, BVHE and Anderson have undertaken those coercive and anticompetitive agreements and practices with the express purpose and intent of unlawfully restraining competition in the relevant market by

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

excluding Redbox as a competitor for sales of Disney titles in that market. BVHE and Anderson have no valid business justification for that conduct.

165. BVHE's and Anderson's coercive and anticompetitive agreements and practices are illegal "trusts" under the Cartwright Act because they constitute combinations of capital, skill and acts by BVHE, Anderson and others for the following purposes:

    a. Creating and carrying out restrictions in trade or commerce in the relevant market;

    b. Limiting and reducing the production of, and increasing the price of, merchandise in the relevant market;

    c. Preventing competition in the sale and purchase of merchandise in the relevant market; and

    d. Making, entering into, executing and carrying out contracts, obligations and agreements to refuse to sell articles of trade, and to pool interests connected with the sale of articles so that their prices might be affected;

all in violation of California Business & Professions Code §§ 16726 & 16720.

166. As a direct and proximate result of BVHE's and Anderson's unlawful conduct, Redbox has suffered economic injury and has been damaged in its business, property and other economic interests in an amount to be determined at trial.

167. BVHE's and Anderson's anticompetitive agreements and practices have directly increased Redbox's procurement costs, diminished Redbox's future sales and profit opportunities, and prevented Redbox from offering products to consumers.

168. Unless enjoined, BVHE's and Anderson's conduct is likely to persist and will continue to cause irreparable loss and damage to Redbox and the general public, for which Redbox and the general public have no adequate remedy at law. To the extent that BVHE and Anderson seek to initiate, renew, enforce or continue

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

such coercive and anticompetitive agreements and practices with Disney distributors and retailers in a manner that unlawfully restrains trade and commerce in the relevant market and harms Redbox, BVHE and Anderson should be enjoined from continuing those coercive and anticompetitive agreements and practices.

**PRAYER FOR RELIEF**

WHEREFORE, Redbox prays for judgment against Defendants for the following relief:

1. For an order enjoining Defendants and any person acting on their behalf or in concert with them:

    a. From falsely stating that they own digital movies and/or codes purchased by Redbox or that a purchaser of Combo Packs may not separately sell the individual components, including digital movie codes;

    b. From attempting to prohibit distributors or retailers from selling Combo Packs or other Disney titles to Redbox or otherwise interfering with Redbox's business relationships with its supply vendors and customers;

    c. From unlawfully, unfairly or fraudulently competing by falsely stating that Redbox may not resell the components of Combo Packs or by interfering with Redbox's relationships with its supply vendors and customers; and

    d. Requiring Defendants to give notice and corrective advertising to purchasers of Combo Packs of the unenforceability of the packaging and website terms described herein.

2. For a declaration:

    a. That Defendants may not enforce any copyright in a motion picture while illegally purporting to prohibit resale or rental of copies of those works, by conditioning use of digital movie codes on ownership of the

FIRST AM. COMPLAINT
CASE NO. 2:18-cv-00677-DDP (AGRx)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1     other components of a Combo Pack, or by interfering with supply

2     vendors' ability to sell copies of those works to Redbox and/or other

3     resell or rental outlets; and

4        b.   That the misleading statements from Defendants' packaging and

5             websites outlined above are unenforceable and shall not be included on

6             Defendants' packaging.

7     3.    For Redbox's damages and Defendants' profits in such amount as the

8  Court or a jury may find; such additional recovery as the Court shall find to be

9  necessary, up to three times the amount of Redbox's actual damages; corrective

10 advertising; and such additional award as the Court finds to be just pursuant to 15

11 U.S.C. § 1117.

12    4.    For Redbox's damages and restitution to the fullest extent allowed

13 pursuant to the common law and Cal. Bus. & Prof. Code § 17203.

14    5.    For trebled damages under the Clayton Act.

15    6.    For an award of punitive damages pursuant to Cal. Civ. Code § 3294.

16    7.    For prejudgment interest pursuant to Cal. Civ. Code § 3287.

17    8.    For Redbox's attorneys' fees and costs incurred in this action under 15

18 U.S.C. § 1117 and any other applicable law.

19    9.    For all such further relief to which Redbox may be entitled or which the

20 Court deems just and proper.

### DEMAND FOR JURY TRIAL

22    Redbox demands a trial by jury on all issues triable by a jury.

23 //

24

25

26

27

28

1   DATED: April 10, 2018          ROBINS KAPLAN LLP

2

3                                  BY: Roman M. Silberfeld

4

5

6                                  AXINN, VELTROP & HARKRIDER LLP

7                                  BY:   */s/ Michael L. Keeley*
                                        Michael L. Keeley
8

9                                  *Attorneys for Plaintiff*
                                   Redbox Automated Retail, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AM. COMPLAINT
                                  CASE NO. 2:18-cv-00677-DDP (AGRx)

**COMPLAINT EXHIBIT A**

| New and Recent Releases | Classics/Signature Collection |
|---|---|
| Alice Through the Looking Glass | Bambi |
| Beauty & the Beast (Live Action) | Beauty and the Beast |
| Big Hero 6 | Lady & the Tramp |
| Cars 3 | Lion King |
| Cinderella | Mary Poppins |
| Coco | Pinocchio |
| Doctor Strange | Snow White & the Seven Dwarfs |
| Finding Dory | |
| Frozen | |
| Guardians of the Galaxy Vol. 2 | |
| Inside Out | |
| Iron Man 3 | |
| Maleficent | |
| Moana | |
| Muppets: Most Wanted | |
| Oz the Great and Powerful | |
| Pete's Dragon (2016) | |
| Pirates of the Caribbean: Dead Men Tell No Tales | |
| Planes | |
| Planes: Fire & Rescue | |
| Rogue One: A Star Wars Story | |
| Star Wars: The Force Awakens | |
| Star Wars: The Last Jedi | |
| The BFG | |
| The Good Dinosaur | |
| The Jungle Book | |
| The Lone Ranger | |
| Thor: Ragnarok | |
| Tomorrowland | |
| Zootopia | |